IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDDIE J. JONES,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 06-2924** |
| | : | |
| **GALE A. NORTON, SECRETARY** | : | |
| **DEPARTMENT OF INTERIOR** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                              February 8, 2007

This is an employment discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII). The plaintiff has filed a motion to compel answers to interrogatories. For the following reasons, I will grant the motion in its entirety.

**I. BACKGROUND**

The Complaint alleges that plaintiff Eddie J. Jones, an African-American, began his employment as a gardener for the National Park Service in Philadelphia in September 2000.[1] It describes at least two instances where his employer permitted racial harassment in the workplace. First, in May 2005, a Caucasian employee referred to two African-American employees as "black bitches," with no repercussions from the defendant. Second, in May 2004, Mr. Jones informed his superiors that he had witnessed other workers with National Park Service equipment in their private vehicles, and these employees engaging in some irregularities in clocking-in and clocking-out. Richard DiPietro, a Caucasian coworker, confronted Mr. Jones in the lockerroom,

---

[1] In his declaration attached to this motion, Mr. Jones indicated his employment began at the National Park Service "around October 2002." See Exhibit B.

asking him "what is your problem, you black motherfucker, I'll kick your fucking ass, you black motherfucker." He continued, "Who do you think you are coming in here trying to change things; I don't care if you know martial arts, you black son of a bitch, I'll fuck you up."

During this altercation, a Caucasian female employee entered the lockerroom and said to Mr. DiPietro, "Come on Rick, that piece of shit isn't worth it." As he walked out of the locker room, Mr. DiPietro said, "you don't know who you're messing with...I'll kill you nig." Mr. Jones also believes that Mr. DiPietro called him a "black nigger." Joseph Savage, a Caucasian coworker who witnessed the outburst, testified, "And the next thing out of Rick's mouth was, you rat nigger bastard or something similar." Mr. Savage continued, "That's when Rick turned around and says, we don't need nigger bastards like you around here."

Mr. Jones saw a Caucasian supervisor in the locker room, and began to tell him what happened. The supervisor stopped him saying, "I did not hear anything." Then, he said, "I don't know anything about it." Later, he said, "from what I was told, you were the one who started the altercation. . . .You want to play by the rules, I'll show you the rules."

Mr. Jones was then provided assignments separate and apart from other employees. In June 2006, Mr. Jones filed suit against his employer claiming employment discrimination based on his race and color.

On November 6, 2006, the plaintiff served his first set of interrogatories and request for documents where he sought all written and oral disciplinary actions taken against Mr. DiPietro during his employment with the National Park Service, including all memoranda created by the defendant regarding the disciplinary action taken against Mr. DiPietro for the events connected to this action. The defendant objected to providing the documentation because it was confidential.

## II.  LEGAL STANDARD

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  FED. R. CIV. P. 26(b)(1).  Federal Rule of Evidence 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  The federal rules allow broad and liberal discovery.  Pacitti, et al. v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999); In re Madden, 151 F.3d 125, 128 (3d Cir. 1998) (pretrial discovery is accorded a broad and liberal treatment).

## III.  DISCUSSION

The plaintiff argues that the information sought is relevant because it could assist him in proving his case, i.e., whether the defendant allowed a hostile environment to exist in its workplace.  The defendant insists that the requested records are not relevant and are protected by the Privacy Act.

The Privacy Act provides that no government agency shall disclose any record contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains.  5 U.S.C. § 552a(b).  The records, however, may also be produced pursuant to a court Order.  5 U.S.C. § 552a(b)(11).  In determining whether to issue such an Order, the usual discovery standards of Federal Rule of Civil Procedure 26(b)(1) apply.  Bray v. United States, 2005 U.S. Dist. LEXIS 3869, *3 (E.D. Pa. March 14, 2005).  The relevancy of

potential discovery should be liberally construed.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Nevertheless, discovery "has ultimate and necessary boundaries."  Id.

To prevail, Mr. Jones must prove the following five elements of a *prima facie* case for hostile work environment:  (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability.  Allen v. AMTRAK, 2007 U.S. App. LEXIS 2216 (3d Cir. 2007) (citing Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006)).  Under Title VII, an employer can only be held liable for the actions of other employees in creating a hostile work environment when the plaintiff-employee can prove that "the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action."  Weston v. Pennsylvania, 251 F.3d 420, 427 (3d Cir. 2001).

As discovery in this case progressed, it became apparent that the incident with Mr. Jones was not Mr. DiPietro's only angry outburst in the workplace.  Jean Marra, Chief of Maintenance, testified that Mr. DiPietro had been counseled in the past for abusive and offensive language.  Mr. Marra could not remember the content of the language Mr. DiPietro had used to warrant such counseling.  The record also contains the declaration of Michael Coleman, an African-American former employee, who had been racially harassed by Mr. DiPietro with the same offensive language he used with Mr. Jones.  This incident caused Mr. Coleman to have a nervous breakdown and leave his employment at the National Park Service.  Mr. Coleman also indicated that he was aware of many other incidents where Mr. DiPietro made racially derogatory remarks,

and that management knew of these incidents.

Notwithstanding the testimony of coworkers to the contrary, Mr. Marra did not include any reference to Mr. DiPietro's language being racially-charged in his memorandum outlining the reasons for Mr. DiPietro's seven day suspension.  See Pl. Exhibit H.  Mr. Marra testified that he chose not to include the racial comments in the memorandum because he felt that Mr. Jones had been equivocal in recounting the details of the incident.  The plaintiff characterizes this decision as further evidence that the defendant's management was aware of DiPietro's racial harassment of African-American employees yet failed to take corrective action.

What is troublesome to this court is the possibility that documentation of other disciplinary actions taken against Mr. DiPietro has also been sanitized by management of the defendant.  Thus, I find the information sought by the plaintiff is relevant.  It would assist him in determining whether the defendant was aware of the hostile work environment created by Mr. DiPietro, and failed to take appropriate remedial action.  See Weston, 251 F.3d at 427.  I will grant the plaintiff's motion.

An appropriate Order follows.