IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDIE J. JONES, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-2924 |
| | : | |
| GALE A. NORTON, | : | |
| Secretary United States Department | : | |
| of the Interior, | : | |
| Defendant | : | |

M E M O R A N D U M

STENGEL, J.                                                                                  January 31, 2008

The plaintiff in this case, Eddie Jones, has worked for the Department of the

Interior since September 2000, starting as a gardener and later working as an irrigation

worker after a promotion in August 2005.[1]   Jones brought this action under Title VII of

the Civil Rights Act of 1964, alleging that the Department of the Interior, and more

specifically the National Park Service, Independence National Historic Park, violated his

civil rights by creating a racially hostile work environment.  Jones' allegation is based on

a single incident that occurred on May 25, 2004, between himself and a coworker,

Richard DiPietro.  The defendant moved for summary judgment on the ground that, as a

matter of law, the plaintiff cannot prove a single element of a hostile work environment

claim under Title VII.  For the reasons set forth below, I will grant the defendant's motion

---

[1]According to his own testimony at a deposition, Jones still works for the Independence
National Historic Park.  (Jones Tr. 113:7-8.)

for summary judgment, and dismiss the Complaint in its entirety.

## I.     BACKGROUND[2]

Jones' allegations against the Park stem from a single incident that occurred in the

Park employee's locker room on May 25, 2004.  On May 23, 2004, Jones had explained

to the Chief of Maintenance, Jean Marra, that certain Park employees, including himself,

would occasionally stand idle while they were waiting for co-workers, including Richard

DiPietro, to arrive from the parking lot at Old Swede's Church.  Jones also told Marra

that these co-workers were receiving rides from the parking lot in a truck owned by the

Park.  Marra later issued a memo about parking, which made Jones' co-workers unhappy,

and on May 25, 2004, Richard DiPietro learned that it was Jones who informed Marra of

the parking issue.  Later that day, DiPietro confronted Jones about the memo in the locker

room, making offensive comments to his co-worker, including calling him a "black son of

a bitch," and a "black motherfucker."  Jones also believes DiPietro called him a "nigger,"

as he was leaving the locker room, but did not hear the word clearly.  Other witnesses to

the incident corroborate Jones' description of the offensive, racial animus that

characterized DiPietro's outburst.  According to Jones himself, however, DiPietro made

these comments because he was angry about the parking memo.

After the incident, Jones called the Park Rangers, and was instructed to write down

his own description of the incident.  On May 27, 2004, Jones transcribed his report on an

---

[2]As I am required to do for purposes of this motion for summary judgment, I have viewed all facts in the light most favorable to the plaintiff as the non-moving party.

official Park Ranger document.  Marra conducted an investigation, and issued a proposed

seven-day suspension notice to DiPietro on October 14, 2004.  However, the Park, upon

reviewing Marra's investigation, found it to be incomplete and ordered Marra to re-

investigate the incident.  Marra conducted a second round of interviews on January 21,

2005.  On July 25, 2005, the Park issued a Decision on Proposed Suspension to DiPietro,

imposing a three-day suspension without pay for DiPietro's "disrespectful and

inappropriate statements towards a co-worker."  In addition to DiPietro's suspension, the

Park management set up a workshop with a clinical psychologist in response to the

incident with Pietro.  Jones had requested sensitivity training after the incident, and he

and his co-workers participated in the workshop.

As the internal investigation of the incident proceeded, Jones also filed and EEO

complaint on September 13, 2004.  The EEO denied Jones' claim on November 25, 2005.

Jones has filed no further EEO claims.  According to his own testimony, Jones was

satisfied with the Park investigation process, in general and as applied to his own

complaint.  He even stated in a deposition that DiPietro's suspension would be the "most

extreme" remedy.  Jones has had no further altercations with DiPietro.  However, he does

claim he feels "on pins and needles" at work, and that he suffers from anxiety attacks that

were "possibly" due to the incident.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the non-moving party. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might

affect the outcome of the case under governing law. Id.

   A party seeking summary judgment always bears the initial responsibility for

informing the court of the basis for its motion and identifying those portions of the record

that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of

proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply

by "pointing out to the district court that there is an absence of evidence to support the

non-moving party's case." Id. at 325. After the moving party has met its initial burden,

"the adverse party's response, by affidavits or otherwise as provided in this rule, must set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

That is, summary judgment is appropriate if the non-moving party fails to rebut by

making a factual showing "sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Celotex

Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence

presented on the motion in the light most favorable to the opposing party. Anderson v.

4

Liberty Lobby, Inc._, 477 U.S. at 255.  The court must decide not whether the evidence

unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party

has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of

material fact, then the court cannot credit the movant's version of events against the

opponent, even if the quantity of the movant's evidence far outweighs that of its

opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363

(3d Cir. 1992).

### III.    DISCUSSION

A.    Elements of a Hostile Work Environment Claim

To prevail on a hostile work environment claim under Title VII, the plaintiff must

show a workplace that is "permeated with discriminatory intimidation," Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002), and that this atmosphere of

"pervasive or severe intentional discrimination . . . would also affect a reasonable

person."  Bouton v. BMW of North America, Inc., 29 F.3d 103, 106 (3d Cir. 1994) (citing

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  To establish a claim of

hostile work environment based on racial discrimination, the plaintiff must show that: (1)

he suffered intentional discrimination because of race; (2) the discrimination was

pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the

discrimination would detrimentally affect a reasonable person of the same race as Jones;

and (5) the existence of respondeat superior liability.  Preston v. Bell Atlantic Network

Services, Inc., No. 96-3107, 1997 U.S. Dist. LEXIS 358, *21-22 (E.D. Pa. Jan. 16, 1997)

(citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)).  Whether a

hostile work environment exists is to be determined by the totality of the circumstances,

including the "frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance."  Harris v. Forklift

Systems, Inc., 510 U.S. 17, 23 (1993); see also Cardenas v. Massey, 269 F.3d 251, 261

(3d Cir. 2001).  After reviewing the submissions of both parties on this motion for

summary judgment, I have concluded that Jones can satisfy none of the elements of a

hostile work environment claim.

   B.     Jones Has Failed to Present Sufficient Evidence of Discrimination

   Jones' hostile work environment claim fails principally because he has furnished

no evidence of intentional discrimination as defined under Title VII.  See, e.g., Preston,

1997 U.S. Dist. LEXIS 358, *24 (The "mere utterance of an ethnic or racial epithet which

engenders offensive feelings in an employee does not sufficiently affect the conditions of

employment to implicate Title VII.")  Weighing the facts in favor of Jones, the insolent

outburst by DiPietro on May 25, 2004 suggests a racial animus, arguably providing some

evident of the first element in a hostile work environment claim.  However, "sporadic

racial slurs," alone are insufficient to establish a hostile work environment for Title VII

purposes; in this circuit "there must be a steady barrage of opprobrious racial comments" to support such a claim.  Boyer v. Johnson Matthey, Inc., No. 02-8382, 2005 U.S. Dist. LEXIS 171, at *58 (E.D. Pa. Jan. 6, 2005) (citing Al-Salem v. Bucks County Water & Sewer Auth., 1999 U.S. Dist. LEXIS 3609, at *15-16 (E.D. Pa. Mar. 25, 1999).  In this case, Jones has come forward with evidence of a single, racially charged, highly inappropriate outburst by a fellow employee.  However, DiPietro's actions, though shameful and reprehensible, simply do not rise to the level of intentional racial discrimination required to make out a hostile work environment claim.

Citing Velez v. QVC, Inc., 227 F. Supp. 2d 384, 412 (E.D. Pa. 2002), Jones further asserts that alleged racially motivated comments made by DiPeitro to other employees may give rise to an inference of discrimination throughout the workplace.  Jones' reading of Velez is too broad.  In order for the court to consider additional evidence of racial discrimination, the plaintiff must first show a nexus between that evidence and his own employment conditions.  Id. at 412-413 (citing factors such as temporal proximity, the nature of discriminatory actions, the identity of the actors involved, and the plaintiff's subjective knowledge of the additional incidents of racial discrimination); Boyer, 2005 U.S. Dist. LEXIS 171, at *46-47 (stressing the knowledge requirement).  Jones furnishes evidence of an incident between DiPietro and another Park employee, Michael Coleman, that took place on May 23, 2000, four years before the events that gave rise to the present case, and before Jones was employed by the Park.  Though similar in nature, the incident

is remote in time, and Jones' own testimony contradicts the assertion that he knew of the

Coleman incident at the time of the DiPietro's May 2004 outburst.[3]   Taken together, these

facts do not demonstrate the requisite nexus under <u>Velez</u> to permit an inference of racial

discrimination from evidence of other acts by DiPietro.  <u>Velez</u>, 227 F. Supp. 2d at 412.  I

therefore find that Jones has failed to establish the level of racial discrimination required

under the first two elements of a hostile work environment claim: (1) DiPietro's outburst

does not amount to intentional discrimination, (2) there is no showing that discrimination

was pervasive or regular.

        B.      <u>Jones Was Not Detrimentally Affected Within the Meaning of Title VII</u>

Courts have required both a subjective and an objective determination of the affect

that alleged discrimination may have on employment conditions under Title VII.  <u>See</u>

<u>Preston</u>, 1997 U.S. Dist. LEXIS 358, *22.  Jones' claim fails on both elements.  The

evidence of record shows not only that Jones himself was not upset by DiPietro's attack,

(Jones Tr. 63:10-12; 64:22-65:2), but also that he suffered no further racially motivated

harassment.  <u>See</u> <u>Rogers v. EEOC</u>, 454 F.2d 234, 238 (5th Cir. 1971) quoted in <u>Ezold v.</u>

<u>Wolf, Block, Schorr and Solis-Cohen</u>, 983 F.2d 509, 547 n. 39 (3d Cir. 1992) ("several

stray remarks by a nondecisionmaker over a period of five years" did not amount to

---

[3]In his deposition, Jones discusses the Coleman incident, as well as other unsavory, racist
comments made by DiPietro to fellow employees.  It is clear from Jones' own testimony that he
did not know of these other incidents before his own confrontation with DiPietro.  In response to
the question, "Did anyone complaint to you about [the locker room incident]?" Jones stated, "Oh,
yes.  That's how I found out about Mr. DiPietro having the other altercations with other
employees, like Michael Coleman . . . ."  (<u>See</u> Jones Tr. 116: 17-25.)

changed conditions).  Jones also received regular promotions within the Park, saw

DiPietro penalized for his actions through after a thorough investigation of DiPietro's

outburst, and convinced Park management to set up sensitivity training in response to the

incident.  It is clear from these facts that Jones himself was not detrimentally affected by

the alleged racial discrimination, nor would a reasonable person be so affected.

> C.      Jones Cannot Establish Park Liability

The most compelling grounds for dismissing Jones' claim on summary judgment is

that no basis for respondeat superior liability exists under the facts.  See Preston, 1997

U.S. Dist. LEXIS 358, *21-22.  Liability may only be imposed on an employer when the

employer knew or should have known of the harassment and failed to take prompt

remedial action.  Bouton v. BMW of North America, Inc., 895 F.2d 1469, 1486 (3d Cir.

1994).  Jones must "demonstrate that the employer failed to provide a reasonable avenue

for complaint, or, if the employer was aware of the alleged harassment, that it failed to

take appropriate remedial action."  Weston v. Pennsylvania, 251 F.3d 420, 427 (3d Cir.

2001).  An employer will be liable for the harassing conduct of the alleged victim's

coworker if the employer was "negligent or reckless in failing to train, discipline, fire or

take remedial action upon notice of harassment."  Andreoli v. Gates, 482 F.3d 641, 644

(3d Cir. 2007) citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997).  An

employer is negligent if it "knew or should have known about the harassment, but failed

to take prompt and adequate remedial action."  Jensen v. Potter, 435 F.3d 444, 453 (3d

Cir. 2006) cited in <u>Andreoli</u>, 482 F.3d at 644.  Even unsuccessful remedial action is

"adequate" if it is "reasonably calculated" to end the harassment. <u>Id.</u> (quoting <u>Knabe v.</u>

<u>Boury Corp.</u>, 114 F.3d 407, 412-13 (3d Cir. 1997)).  As the Third Circuit notes in

<u>Andreoli</u>, the timing and nature of the employer's remedial action govern the

determination of its adequacy.  <u>Andreoli</u>, 482 F.3d at 644.

The facts of this case leave no room for speculation as to the adequacy of the

Park's response to the DiPietro incident.  Indeed, Jones himself stated that a suspension

would be the "most extreme" remedy for DiPietro's actions.  (Jones Tr. 42:9-11; 43:23-

44:3).  The investigation began immediately after Jones notified Park management of the

incident.  There record contains well documented evidence of an in-depth investigation

into the events of May 25, 2004, including the detailed October 14, 2004 report by Jean

Marra recommending a seven-day suspension, Marra's report describing the second round

of interviews, and the final Decision on Proposed Suspension, dated July 25, 2005.  While

the length of time between the incident and DiPietro's eventual punishment is

considerable, it is clear from the record that any delay was caused by meaningful efforts

to insure thoroughness.  <u>Cf.</u>  <u>Jensen v. Potter</u>, 435 F.3d 444, 453 (3d Cir. 2006) (formal

meeting addressing allegations 19 months after harassment not a prompt and adequate

response as a matter of law).  In this case, in contrast to <u>Jensen</u>, DiPietro's July 25, 2005

suspension letter followed an ongoing, formal investigation process, a process with which

Jones himself was satisfied.  (Jones Tr. 29:14-18.)  The Park also arranged a two-day

workshop with clinical psychologists to address the incident on a wider level; this training session was held at Jones' specific request. (Jones Tr. 78:23-79:17.) In sum, a reasonable juror could not conclude that the Park's remedial actions were inadequate. Respondeat superior liability does not exist in this case, as Jones has failed to come forward with specific facts to satisfy the fifth element of a hostile work environment claim.

## IV.    CONCLUSION

Based on the foregoing, I will grant the defendant's motion, dismissing the Complaint in its entirety. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDIE J. JONES, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 06-2924 |
| | : | |
| GALE A. NORTON, | : | |
| Secretary United States Department | : | |
| of the Interior, | : | |
| Defendant | : | |

**O R D E R**

**STENGEL, J.**


**AND NOW**, this 31st day of January, 2008, upon consideration of Defendant's

Supplemental Motion for Summary Judgment (Document #20), it is hereby **ORDERED**

that the motion is **GRANTED**.  The plaintiff's Complaint is hereby **DISMISSED WITH**

**PREJUDICE** in its entirety.


                              BY THE COURT:


                               /s/ Lawrence F. Stengel
                              LAWRENCE F. STENGEL, J.

12